Tbe opinion of tbe Court was delivered by
Withers, J.
If -tbe plaintiff derived no title from John Dinkins, it was because John Dinkins derived none from Elijah Murpby, by means of tbe deed executed by tbe latter, a copy of wbicb accompanies tbe report of tbe circuit judge. Tbe consideration for that deed must be confined to tbe natural love and affection of Elijah Murpby for John Dinkins, (who is called bis nephew, whereas be was really bis cousin,) for though tbe consideration of ten dollars, is also mentioned, and tbe receipt of it acknowledged, there was in fact no money paid, or agreed to be paid. It is, therefore, not a deed of bargain and sale: It is not a conveyance by lease and release, nor a deed of feoffment. Tbe only question is, whether it can operate by way of covenant to stand seized to uses. Tbe words, “ give, grant, bargain and sell,” are employed. Tbe word “ grant,” will serve for such a covenant, if tbe consideration be sufficient; Eoe ex dem. Wilkinson vs. Tranman et al., Willes, 682: “ that would be sufficient (says Willes, C. J.) according to all tbe cases.” In tbe same case will be found strong support of tbe doctrine, drawn from tbe old authorities on common assurances, that deeds wbicb are intended and made to operate one way may operate another way, if tbe intention of tbe parties to pass an estate cannot otherwise be subserved, tbe dictum of Coke Lit. 49, that such benign rule *69 of interpretation did not apply where a man might “pass lands either by the common law, or by raising of an use and settling it by the statute,” to the contrary notwithstanding. That dictum, it was said, had been repudiated for more than an hundred years.
The serious question raised here,, however, was not that this deed could not be construed, upon its face, to operate as a covenant to stand seized, but that the consideration of blood, peculiar to such a deed, was wanting. “A covenant to stand seized to uses, is where a man covenants to stand seized of them to the use of his wife, his child or kinsman.” Butler’s notes, 2 Thos. Coke, Lit. Appx. 553. The relationship of cousin is sufficient; such was the degree of consanguinity in the case above cited from Willes, and no question was made upon that fact. But it was assumed, in the argument before this Court, that the grantor, Elijah Murphy, was a bastard, and could therefore, according to the common law, be the cousin of nobody. The report shows no such fact, but the contrary. The judge, who presided, has referred to his notes of evidence, and they supply the following only: One witness said that by reputation, William Murphy was the father of Elijah, and the mother of the latter was called Molly. A deed by William Muiphy in favor of Mary Dinkins, dated June, 1794, conveying fifty acres of land, had, in relation to her, these words, “ formerly called my wife.” Two witnesses said, that John Dinkins was not the nephew, but the cousin of Elijah Murphy.-
To bastardize the latter we must convert reputation, reported by one witness, into an established fact, that he descended from William Murphy and a woman named Molly; that Mary Dinkins and Molly were one and the same person; that the words cited from the deed of 1794, referring to a period prior to that date, establish the relation of adultery between William Murphy and Mary Dinkins, and that if Elijah Murphy descended from them, he was born *70 out of wedlock, whereas, for any thing that appears, they may have intermarried before his birth. These facts must be assumed, upon such evidence as is stated, that suspicion may be converted into fact. This ought not to be done, in order to make words, used more than sixty years ago, by one long since dead, in relation to another also long since dead, and referring to a period anterior to that even, operate to make a bastard of one who is himself dead, and avoid his deed. If the law be astute, as it is, to maintain written instruments, in a benign spirit towards those who make them, and those who would take interest under them, rather the more so when time has swept off the author and those who could fix facts with certainty ; if charitable presumptions are brought to the aid of questions of fact, of circumstances, and transactions, obscured by the dust of antiquity, surely all will agree, that such vigilance and such presumptions are eminently due from judges and juries, when, to the usual basis of them, is added the question of the good name of those who are dead and living, and the title of the latter to the immunity of the law’s notice and protection. It was well said, therefore, in the case of The Legatee and Executrix of William Johnson, Jr. vs. The Executor of William Johnson, Sr., 1 Des. 595, as follows: “ the evidence of legitimacy was very slight, but the Court would presume a marriage after the lapse of thirty years, especially as all the parties were dead: and if a contrary presumption should prevail, it would have the effect of bastardizing a person after his death, which would be contrary to every principle of law, justice and equity.” Indeed, we have venerable legal authority upon this point; for in Bwrg's case, 5 Coke, 98,(6) it was resolved, under • circumstances strongly adverse to actual belief, that children did really proceed from the putative father, as follows: “Et semper prcesumitur pro legitimations puerorum, et filiatio non potest probari.” Such presumption need not be extended grudgingly by the common law towards those who would otherwise fare worse *71 under its maxim than that of tbe Romans; since our law will not legitimize any but one born in wedlock, and not bim always, whereas tbe civil law treated as legitimate all, though born out of wedlock, if their parents afterwards intermarried.
We, therefore, see nothing to warrant the conclusion, that the deed in question was not founded on the consideration of lawful blood, which makes it good as a covenant to stand seized to the use of him from whom this plaintiff acquired title, and consequently the motion ought to be dismissed, and it is ordered accordingly.
O’Neall, Waedlaw, Whitnee, G-lovee and Mdneo, JJ., concurred.

Motion dismissed.